**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

TRICIA FRANKLIN

Plaintiff,

vs. Case No. 3:06-cv-101-J-32TEM

BLUE CROSS and BLUE SHIELD OF FLORIDA, INC., SHORT TERM DISABILITY PLAN,

Defendant.

---

**ORDER**[1]

Before the Court is Defendants' Motion To Dismiss Or, In The Alternative, Motion For Summary Judgment (Doc. 9-1) for failure to state a claim under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.* The Court has considered plaintiff Tricia Franklin's ("Franklin") complaint, defendant's notice of removal, the parties' memoranda and submissions (Docs. 1, 2, 9, 10, 14, 16, 17), and the Blue Cross Blue Shield of Florida Human Resources Policy and

---

[1] Under the E-Government Act of 2002, this is a written opinion and therefore is available electronically. However, it is intended to decide the motion addressed herein and is not intended for official publication or to serve as precedent.

Procedures Short Term Disability ("Policy").[2] (Doc. 19.) The Court heard argument on April 11, 2006 (Doc. 12), and requested supplemental briefing, which has now occurred. (Docs. 14, 16, 17.)

## I. Background

Plaintiff Franklin filed this action in state court, alleging that this action is

---

[2] Though plaintiff Franklin has named the "Blue Cross and Blue Shield of Florida, Inc., Short Term Disability Plan" as defendant, (Doc. 2 at 2, ¶ 5), the defendant submitted and filed with the Court an eight-page short term disability "Human Resources Policy and Procedures" ("Policy") (Doc. 19) as being the subject of this litigation. Franklin alleges that the "BlueCross and BlueShield Association/National Employee Benefits Administration", with principal headquarters in Chicago, Illinois, administers the "plan." (Doc. 2 at 1, ¶ 4.) This is in accord with representations and evidence submitted by the defendant that the Policy "is not a legal entity," but rather an administrative policy of Blue Cross and Blue Shield of Florida, Inc. ("BCBSF"), which is administered by the Blue Cross and Blue Shield Association ("Association"). (Docs. 1 at 1-2, 9,12; 9-1 at 1; 9-2 at 3, ¶ 4; 17 at 1-2.)

Franklin served a copy of the complaint and a summons on the Association. (Doc. 1 at 2, ¶ 2, 7.)

"An employee benefit plan may sue or be sued under this subchapter as an entity. Service of summons, subpoena, or other legal process of a court upon a trustee or an administrator of an employee benefit plan in his capacity as such shall constitute service upon the employee benefit plan." 29 U.S.C. § 1132(d)(1).

The Eleventh Circuit has determined that "[t]he proper party defendant in an action concerning ERISA benefits is the party that controls administration of the plan." Garren v. John Hancock Mut. Life Ins. Co., 114 F.3d 186 (11th Cir. 1997). The plaintiff has not moved to amend the complaint to name the Association as defendant, and the defendant has not moved to dismiss or seek summary judgment on the basis that Franklin has sued the wrong party. Finding that the proper parties are before the Court, the Court will address the merits of defendant's motion. See 29 U.S.C. 1132(d)(1); see also Smith v. The Home Depot Welfare Benefits Plan, No. 8:04-CV-1924-T-23TBM, 2006 WL 1980284, at * 1 n.1, * 4 n. 2 (M.D. Fla. July 12, 2006).

brought against the Policy for failure to pay benefits, in violation of 29 U.S.C. § 1132(a). (Doc. 2 at 1-2, ¶¶ 1, 4.) Franklin alleges that she was employed by Blue Cross and Blue Shield of Florida, Inc. ("BCBSF") since November 2, 1998, and "was discharged because of her illness and inability to work." (Id. at 1, ¶ 3.) Because Franklin alleged in her complaint that her claim was brought pursuant to ERISA, 29 U.S.C. § 1132(a)(1)(B), the defendant removed the case to federal court. (Doc. 1.)

Franklin alleges that "[i]n or about July, 2003 [she] became disabled within the meaning of the defendant Policy, thus triggering the short term disability benefits available under the Plan." (Doc. 2 at 2-3, ¶ 10.) She alleges that her request for short term disability ("STD") benefits was denied on or about July 28, 2003, and again on November 20, 2003, and that on February 11, 2004, "the Plan denied [her] appeal from its adverse ruling denying benefits." Franklin alleges that she has exhausted her administrative remedies. (Id. at 2-3, ¶¶ 6, 11.) She seeks short term disability benefits, prejudgment interest, costs and attorneys' fees. (Doc. 2 at 3.)

The Policy moves to dismiss Franklin's complaint, and alternatively for summary judgment, on the basis that the short-term disability benefits Policy is not part of an employee welfare benefits plan contemplated by and subject to ERISA, but rather is a "payroll practice." (Doc. 9-1 at 2.) In connection with its motion, the Policy submits evidence in the form of an affidavit of Barbara J. Grant ("Grant"), Director of the Disability Program for the National Employee Benefits Administration ("NEBA") of

the Blue Cross and Blue Shield Association ("Association"). (Doc. 9-2.)

Referring to the Policy, Grant states that "BCBSF provides employees with income protection, through its regular payroll system, in the event employees are unable to work due to a qualifying disability . . . . The benefits are paid out of BCBSF's general assets." (Doc. 9-2 at 1, ¶ 3 (Grant affidavit).) Grant further states that BCBSF has retained the Association to review and evaluate claims under the Policy, and that the "Association, through NEBA, administers the short term disability policy for BCBSF." (Id. at 3, ¶ 4.)

According to the terms of the eight-page Policy, BCBSF "provides eligible employees with income protection, through the regular payroll system, in the event they are unable to work due to a qualifying disability . . . . " (Doc. 19 at 1.) Full time employees who have completed three months of employment are eligible to apply for short term disability. A third-party vendor serves as "program administrator," and "processes applications for short-term disability benefits, renders decisions on the award of benefits, provides disability case management services and integrates benefits related to the LTD [long term disability] program." (Id.)

The Policy includes a "Benefit schedule" setting forth that

> [b]enefits are provided as either 100% or 70% of the employee's regular rate of pay at the time STD benefits begin, based on the employee's length of service with the Company at the time STD benefits begin . . . .

(Doc. 19 at 2.) Short-term disability benefits are available for a maximum of 1,040

hours in a benefit year. Of that total, those with the most years of service with BCBSF are eligible to receive more hours of benefits at 100% of their pay; those with short service receive the bulk of their benefits at 70% of base pay. (Policy at 2-3.) Specifically, the Policy allows STD benefits at the following levels:

| | |
|---|---|
| Less than 3 months: | Not Applicable |
| 3-12 months service: | 0<br>Exempt: 1,040 hrs.<br>Non-Exempt: 520 hrs. |
| 1-3 years service: | 80 hrs. at 100%<br>960 hrs. at 70% |
| 3-5 years service: | 160 hrs. at 100%<br>880 hrs. at 70% |
| 5-10 years service: | 320 hrs. at 100%<br>720 hrs. at 70% |
| 10-15 years service: | 480 hrs. at 100%<br>560 hrs. at 70% |
| 15-20 years service: | 640 hrs. at 100%<br>400 hrs. at 70% |
| 20-25 years service: | 800 hrs. at 100%<br>240 hrs. at 70% |
| 25 or more years | 1040 hrs. at 100% |

(Doc. 19 at 2-3.) The Policy provides specific procedures for filing a STD claim with the program's administrator accompanied by "satisfactory medical evidence." The administrator may request an independent medical examination, to be conducted "at the Company's [BCBSF's] expense." Benefits are terminated when the employee returns to work, when the employee's STD benefits are exhausted, if the employee fails to provide satisfactory medical evidence as determined by the administrator, or

for other enumerated reasons. (Doc. 19 at 3-5.) There is no indication that employees are charged anything for participation in the STD. Decisions of the program administrator may be appealed, in accordance with the procedure provided by the Policy. (Id. at 6.)

The Court treats the Policy's motion as a motion for summary judgment. See Trustmark Ins. Co. v. ESLU, Inc., 299 F.3d 1265, 1267-68 (11th Cir. 2002).[3]

## II. Legal Standard

Summary judgment is proper where "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "The moving party bears the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Hickson Corp. v. Northern Crossarm Co., 357 F.3d 1256, 1260 (11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)) (internal quotations omitted). An issue is genuine when the evidence is such that a reasonable

---

[3] The Court at the April 11, 2006 hearing announced that it was considering materials submitted beyond the four-corners of the Complaint, specifically the actual Short Term Disability Policy and Procedures, and the Grant affidavit, and invited the parties to supplement their submissions. (See Doc. 12.) The parties understood that the motion to dismiss was converted to and being considered as a motion for summary judgment. See Brown v. Brock, 169 Fed. Appx. 579, 582 (11th Cir. 2006)(unpublished opinion)(citations omitted).

jury could return a verdict for the nonmovant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-250 (1986). In determining whether summary judgment is appropriate, a court must construe the facts and draw inferences from the evidence in the light most favorable to the nonmovant. Centurion Air Cargo, Inc. v. United Parcel Service Co., 420 F.3d 1146, 1149 (11th Cir. 2005).

## III. Discussion

ERISA regulates "employee welfare benefit plans," which include "any plan, fund, or program which . . . is established . . . or maintained by an employer . . . for the purposes of providing for its participants . . . , through the purchase of insurance or otherwise . . . benefits in the event of sickness . . . [or] disability . . . ." 29 U.S.C. § 1002(1). Congress delegated to the Secretary of the Department of Labor the authority to prescribe regulations "necessary or appropriate to carry out the provisions of" ERISA. 29 U.S.C. § 1135. The Secretary of Labor has promulgated a regulation that excludes certain "payroll practices" from the application of ERISA. That regulation provides that an employee welfare benefit plan "shall not include -

. . .

> (2) Payment of an employee's normal compensation, out of the employer's general assets, on account of periods of time during which the employee is physically or mentally unable to perform his or her duties, or is otherwise absent for medical reasons (such as pregnancy, a physical examination or psychiatric treatment) . . . .

29 C.F.R. § 2510.3-1(b)(2). Benefits meeting this definition do not constitute an employee welfare benefit plan under ERISA but instead are considered an exempted "payroll practice" not regulated by the provisions of ERISA.

"According to the preamble to the regulation, such plans are exempted from coverage under ERISA because 'although related to benefits described in [29 U.S.C. § 1002(1)], [they] are more closely associated with normal wages or salary.'" Bassiri v. Xerox Corp., No. 04-55472, ___ F.3d ___, 2006 WL 2598051, at * 2 (9th Cir. Sept. 12, 2006)(quoting 40 Fed. Reg. 34256 (Aug. 15, 1975)).[4] The regulation was drafted to make clear that certain employer practices "'under which employees are paid as part of their regular compensation directly by the employer and under which no separate fund is established will not subject the employer to any filing or disclosure duties under Title I of [ERISA].'" Martin Marietta Energy Systems, Inc. v. Industrial Commission of Ohio, 843 F. Supp.1206, 1211 (S.D. Ohio 1994)(quoting 39 Fed. Reg. 42,236 (1974)(Secretary of Labor forecasting 29 C.F.R. § 2510.3-1(b)). Thus, an employer's program providing an employee "normal compensation" when the

---

[4] The policy reason behind this "payroll practices" exception to ERISA has been described as being consistent with the underlying purpose of ERISA, which is to protect workers from abuses and mismanagement in the administration and investment of private retirement and employee welfare plans. Massachusetts v. Morash, 490 U.S. 107, 112-16 (1989); Stern v. IBM Corp., 326 F.3d 1367, 1372 (11th Cir. 2003). "Where an employer pays occasional, temporary benefits from its general assets, there is no benefits fund to abuse or mismanage and no special risk of loss or nonpayment of benefits." McMahon v. Digital Equipment Corp., 162 F.3d 28, 36 (1st Cir. 1998).

employee is unable to work due to sickness or accident is exempted from ERISA coverage by the regulation. See Stern v. IBM Corp., 326 F.3d 1367, 1372 (11th Cir. 2003). The issue presented here is whether the Policy is an ERISA-regulated plan, or an excepted payroll practice.

Two requisites require examination: (1) whether the short term disability benefits contemplated by the Policy are paid out of BCBSF's "general assets," and (2) whether the short term disability benefits available under the Policy are the recipient employee's "normal compensation." 29 C.F.R. § 2510.3-1(b)(2). As to the source of payment of STD benefits, the Policy has put forth the sworn testimony that BCBSF provides its employees with income protection through its regular payroll system, and that the STD benefits contemplated by the Policy are paid out of BCBSF's general assets. (Doc. 9-2 at 1, ¶ 3 (Grant affidavit).) On its face, the Policy says that STD benefits are provided "through the regular payroll system." (Doc. 19 at 1.) While questions remain about the details of the Policy's funding, Franklin has produced no evidence that the short term disability benefit funding is from any source other than BCBSF's general assets. The Grant affidavit, attesting to the fact that pay-outs under the Policy are paid out of BCBSF's general assets, is uncontested. On this record, there is no contrary evidence that would allow a reasonable trier of fact to conclude Grant's affidavit testimony is insufficient. See Laney v. Independence Blue Cross, No. Civ.A. 04-1822, 2006 WL 724559, at * 3 (E.D. Pa. 2006)(uncontested declaration

that STD pay-outs come from employer's general assets); Havey v. Tenneco, Inc., No. 98 C 7137, 2000 WL 198445 at * 7 (N.D. Ill. 2000)(unpublished opinion)(affidavit evidence that STD benefits are paid out of general assets establishing that plan is a "payroll practice"); McGraw v. FD Services, Inc., 811 F. Supp. 222, 225 (D.S.C. 1993).

The parties do not dispute that recipients of STD benefits under the Policy receive less than full compensation. While this on its face might appear to disqualify the Policy from the § 2510.3-1(b)(2) regulation, courts addressing this issue defer to Department of Labor opinion letters and consistently rule that payment of less than full compensation from an employer's general assets constitutes an employer payroll practice exempt from ERISA.

Most recently, the Ninth Circuit in Bassiri, supra, reversed a district court decision,[5] and held that a long term disability plan paid from the employer's general assets, was exempted from the requirements of ERISA as a payroll practice even though the benefit payments were 60% of the employee's full salary. Determining that the regulation's term "normal compensation" is ambiguous, the court deferred to

---

5 Franklin cites as her only legal support for her argument that the Policy is an ERISA employee benefits plan, the case Bassiri v. Xerox Corp., 292 F. Supp.2d 1212, 1221 (C.D. Cal. 2003), which held that the long term disability plan at issue was an employee benefit plan governed by ERISA because the benefits paid to the employee were 60% of his normal salary, and thus not "normal compensation." (Doc. 10 at 2.) That decision was reversed recently by the Ninth Circuit Court of Appeals. Bassiri v. Xerox Corp., No. 04-55472, __ F.3d __, 2006 WL 2598051 (9th Cir. Sept. 12, 2006)

twenty-five years of Department of Labor opinion letters interpreting the "normal compensation" term as not requiring full compensation. Bassiri, 2006 WL 2598051, at * 3-5. "The Department of Labor has chosen to define 'normal compensation' broadly and focus on the *source* of the funding, rather than its amount. This choice is in line with the purpose of the statute" to protect employees from mismanagement of separate ERISA funds. Bassiri, 2006 WL 2598051, at * 5 (emphasis in original). "For over twenty-five years, employers have relied on this interpretation and have shaped their plans around the Department of Labor's definition." Id. at *5.

The Ninth Circuit's conclusion is in accord with the full weight of authority, all of which cite the Department of Labor interpretation.[6] See Havey, 2000 WL 198445, at * 8 (STD benefit was 60% of full compensation); Hite v. Biomet, Inc., 38 F. Supp.2d 720, 730 (N.D. Ind. 1999)(employer's STD plan was an exempted "payroll practice" even though plan provided on 60% of employee's normal compensation); Williams v. Great Dane Trailer Tenn., Inc., No. 94-2189, 1995 WL 447268, at * 2 (W.D. Tenn. 1995) (unpublished opinion)(STD benefits offered by employer are not part of an employee welfare benefit plan governed by ERISA but an exempted "payroll practice" even though it provides employees with less than full compensation); Martin Marietta Energy Systems, Inc., 843 F. Supp. at 1211 (occupational disability pay that was less

---

[6] Although the Eleventh Circuit has not addressed this precise issue, its discussion in Stern, supra note 4, at 8, can be viewed as supportive of this result.

than full compensation was an exempted "payroll practice").

Franklin's argument that the "payroll practice" exemption regulation is invalid as being inconsistent with congressional intent (Doc. 14 at 2, 3-6) has been consistently rejected. In determining that an employee vacation plan constituted a "payroll practice," the Supreme Court in Massachusetts v. Morash, 490 U.S. 107 (1989) deferred to the Secretary of Labor's promulgation of 29 C.F.R. § 2510.3-1(b) as being in accord with Congress' primary concern when enacting ERISA to address mismanagement of funds accumulated to finance employee benefits plans. See Morash, 490 U.S. at 115-18. Accord Stern, 326 F.3d at 1372; Capriccioso v. Henry Ford Health Systems, 225 F.3d 658, 2000 WL 1033030, at * 2 (6th Cir. 2000)(unpublished opinion)(salary continuation benefit was a payroll practice because the salary was paid out of the employer's general assets); McMahon v. Digital Equip. Corp., 162 F.3d 28, 36 (1st Cir. 1998)(noting that a program that pays an employee's salary while he is disabled would not be an ERISA plan when the employer "pays occasional, temporary benefits from its general assets," because "there is no benefits fund to abuse or mismanage and no special risk of loss or nonpayment of benefits"); Alaska Airlines, Inc. v. Oregon Bureau of Labor, 122 F.3d 812, 814-15 (9th Cir. 1997)(holding that an employer's payment of sick leave to its employees, out of the general assets of the corporation, constituted an exempted "payroll practice" rather than an employee welfare benefit plan covered by ERISA); Shea v. Wells Fargo

Armored Service Corp., 810 F.2d 372, 376 (2d Cir. 1987)(accumulated sick leave and vacation pay constituted payroll practice).

The Court also rejects Franklin's argument that the Policy should be judicially estopped from taking the position that the Policy is not an employee benefits plan under ERISA because the Policy removed the case from state court to federal court on the basis that this Court has original jurisdiction over this action under 28 U.S.C. § 1331 and ERISA, 29 U.S.C. § 1132(e). (Docs. 1 at 2, ¶ 4; 14 at 1-3.) Plaintiff's complaint alleged on its face that the Policy was an employee benefits plan within the meaning of ERISA, and that her claim was being brought pursuant to 29 U.S.C. § 1132(a) (Doc. 2), thereby justifying the removal. In removing the case to federal court, the defendant did not waive its position that the Policy was an "administrative policy" of BCBSF, administered by the Association, and not an ERISA plan. (Doc. 1 at 1.) The Court finds that the Policy's representations upon removal did not constitute an inconsistent claim made under oath, nor were they "'calculated to make a mockery of the judicial system.'" Barger v. City of Cartersville, Ga., 348 F.3d 1289, 1293-94 (11th Cir. 2003)(citation omitted).

Based upon the foregoing, the Court concludes that the Policy is not part of an employee welfare benefit plan governed by ERISA, but is a payroll practice exempted from ERISA requirements. Accordingly, defendant's denial of benefits to Franklin cannot give rise to a claim under ERISA.

Having so decided, the Court next considers what to do next. This case is unusual in two respects. First, in the typical case, it is the defendant employer which tries to assert that ERISA controls the plaintiff employee's claim, and the plaintiff employee argues to the contrary. Here, the roles are reversed. Second, the defendant removed this action from state court to federal court based on ERISA, only now to (successfully) argue that ERISA does not apply, leaving plaintiff concerned she may be without a remedy.

Consistent with the Eleventh Circuit's decision in Stern and the unusual procedural posture of this case, the Court has decided to simply find a lack of subject matter jurisdiction and remand the case to state court to allow plaintiff to pursue any state law claims she may have.

Upon due consideration, it is hereby

**ORDERED:**

1. Defendants' Motion To Dismiss Or, In The Alternative, Motion For Summary Judgment (Doc. 9-1) is **GRANTED** to the extent that the Court determines that it lacks subject matter jurisdiction and **REMANDS** this case to the Circuit Court, Fourth Judicial Circuit, in and for Duval County.

2. The Clerk is directed to close this case following remand.

**DONE AND ORDERED** at Jacksonville, Florida, this 27th day of September, 2006.

TIMOTHY J. CORRIGAN
United States District Judge

j.
Copies to:
Counsel of Record